**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON**

**CIVIL ACTION NO. 05-87-DLB**

**CARLOS LOPEZ**                                                                                 **PLAINTIFF**


**VS.**                          **MEMORANDUM OPINION & ORDER**


**OHIO-OKLAHOMA HEARST-ARGYLE TELEVISION, INC.**
**(d/b/a WLWT-TV CHANNEL 5), HEARST ARGYLE TELEVISION**        **DEFENDANTS**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**Introduction**

Plaintiff commenced this action after WLWT-TV/Channel 5 aired an investigative report accusing him of animal neglect. Plaintiff filed suit in Pendleton County Circuit Court alleging defamation, intentional infliction of emotional distress, invasion of privacy (unreasonable publicity and false light), and negligence. The case was timely removed to this Court based upon diversity jurisdiction. After the case was removed, Plaintiff filed an amended complaint to include a claim based on the tort of outrage.

This matter is before the Court upon Defendants Ohio-Oklahoma Hearst-Argyle Television, Inc. and Hearst-Argyle Television, Inc.'s ("Hearst Defendants") Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. (Doc. # 6). Plaintiff filed a response (Doc. # 10), to which Defendants replied (Doc. # 12). Upon review of the record, the Court finds that oral argument is unnecessary. Thus, the motion to dismiss is now ripe for review.

1

Also before the Court is Plaintiff's motion to strike certain documents attached to Defendants' motion to dismiss (Doc. # 11), and motion for leave to file a sur-reply (Doc. # 14).  Defendants have responded to Plaintiff's motion to strike (Doc. # 15), and Plaintiff has filed his reply.  (Doc. # 16).  Both of these motions are also ripe for review.

### Factual Background and Procedural History

This case arises out of a WLWT "Target 5" investigative report that aired on February 15, 2005.  Channel 5 reporter Tom Sussi went to Plaintiff's property, located at 95 Bushy Creek Road in Williamstown, Pendleton County, Kentucky, in response to complaints that Plaintiff's dogs were being neglected.  The source of the complaints was Plaintiff's neighbor, Shawn Herman Erfman.  Plaintiff, who was no longer living at the location, arrived during the broadcast and was confronted by Mr. Sussi about the conditions on the property, which he described as "deplorable."   The following is the transcript of the broadcast:

| | |
|---|---|
| Sandra Ali: | In the meantime, authorities want to know if a Northern Kentucky family left their pets chained, abandoned, and hungry. |
| Dave Wagner: | Their neighbors say they did and tonight they're telling Target 5's Tom Sussi and Tom, how bad was it out there? |
| Tom Sussi: | Well Dave, I'll tell you this, if you are a dog lover, brace yourself, because what you're about to see may trouble you, disgust you, and anger you.  The mud, the feces, and empty bowls break this dog owner's heart. |
| Shawn Herman Erfman: | I think it's horrible.  Uh, um, I think it's terrible for somebody to stop ... to leave dogs like that. |
| Sussi: | Herman says the family who owns this trailer, amid piles of trash and junk cars, moved to a nearby home leaving these two dogs behind, hungry and neglected.  He complained to the Pendleton County Animal Control, but after three weeks of barking up a tree, he called |

2

|                  | Target 5. |
|------------------|-----------|
| Erfman:          | They're being tortured right now. |
| Sussi:           | First, I called Pendleton County Animal Control, but got an answering machine.  I then called the Sheriff.  (On phone): And I'm out here now and I tell you, the conditions are deplorable.  While I waited for help, Carlos Lopez, the dogs' owner, drove up. |
| Carlos Lopez:    | They get fed every day. |
| Sussi:           | These dogs don't look like they're in good condition, sir.  Lopez says his neighbors .... |
| Lopez:           | Because they're [bleep]. |
| Sussi:           | They're what? |
| Lopez:           | They're [bleep]. |
| Sussi:           | And tells me he's in the process of relocating his dogs, they're fed daily, and treated like kings. |
| Lopez:           | The dogs are tooken [sic] care of. |
| Sussi:           | Would you want to live like that? |
| Lopez:           | They are taken care of better than you are. |
| Sussi:           | You think ... I don't have mud all over me. |
| Lopez:           | Better than I am. |
| Sussi:           | I don't have mud all over me. |
| Lopez:           | Better than I am, better than anyone. |
| Sussi:           | This Pendleton County Animal Control officer says he gave Lopez a written warning last Friday to clean up this mess and better provide for his animals.  He'd like to remove these dogs, but says his kennel only holds twelve animals and it's full.  (To officer): Do you feel this is adequate? |
| Officer:         | Uh, no, I don't.  I don't feel this is adequate, but as I stated, I don't have any place to put the animals right now. |

3

| Sussi: | While this family hurried about with water and food, I was promised these dogs would be watched.  (To officer): You'll keep an eye on it? |
|--------|--------|
| Officer: | Yeah, yes, most definitely. |
| Sussi: | Now, we asked Carlos Lopez if he would consider letting us find homes for those dogs.  He said "no."  Where the news comes first, Tom Sussi, News 5.[1] |

Plaintiff characterizes the broadcast as "belligerent, intimidating, and humiliating" and "filled with a panoply of slurs" against him.  He also claims that the rhetoric of the broadcast was "wantonly abusive" and that, since it aired, he has been treated as a "pariah in his community" and "suffered greatly in mind as a result."

The Hearst Defendants have moved to dismiss, alleging that any statements made in the course of the broadcast are: 1) protected opinion, 2) subject to a qualified privilege, 3) not defamatory, or 4) substantially true.[2]  They also ask the Court to take judicial notice of "the images shown and the statements made in [the] broadcast."

**Analysis**

**A.     Motion to Strike**

In adjudicating the pending motion to dismiss, the Court must first determine whether and to what extent the Court may consider the documents submitted by both parties in adjudicating Defendants' motion to dismiss.  In his motion to strike, Plaintiff claims that when adjudicating a 12(b)(6) motion, it is not proper for the Court to consider matters outside the pleadings.  In this case, Defendants attached the following documents

---

[1]The broadcast was underscored by the following caption: Dog Neglect, Pendleton County.

[2]Defendants also assert that Plaintiff's other claims are derivative of his defamation claim, and if that claim is dismissed, the other claims should be as well.

4

as exhibits to its motion to dismiss, to which Plaintiff objects:

1)      the transcript of the broadcast;

2)      the courtesy notice that was left at Plaintiff's residence by the Pendleton County Animal Control (PCAC) on February 12, 2005, listing infractions for failure to have the dogs properly licensed, vaccinated, and on leashes; and

3)      three call logs from the Pendleton County 911 dispatch center indicating that various neighbors had complained about Plaintiff's dogs running loose.

In support of the Court's consideration of these exhibits, Defendants allege that the documents are referred to in Plaintiff's complaint and are central to his underlying claims.

In his motion for leave to file a sur-reply, Plaintiff concedes that the transcript of the broadcast was properly attached to Defendants' motion and can be considered by the Court in adjudication the motion to dismiss.  However, in an effort to refute the apparent significance of Defendants' exhibits, Plaintiff also attached several documents to his response to Defendants' motion to dismiss.  Those documents included:

1)      several Uniform Offense Reports chronicling the animosity between Plaintiff and his neighbor Shawn Herman Erfman;

2)      a letter from the U.S. Department of Justice indicating that Plaintiff was a witness to a federal crime;

3)      the courtesy notice from the PCAC;

4)      photocopies of Plaintiff's completed applications for dog licenses, as well as the licenses themselves;

5)      three affidavits; and

6)      a list of individuals who watched the investigative report at issue.

5

"As a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed.R.Civ.P. 56." *Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir. 1999) (quoting *Weiner v. Klais & Co.,* 108 F.3d 86, 88 (6th Cir. 1997)) *overruled on other grounds by* 534 U.S. 506 (2002).  There are, however, exceptions to this general rule.  Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in plaintiff's complaint and are central to the plaintiff's claim.  *Id.*  Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.  *Id.  See Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir. 1997) (public records); *Lovelace v. Software Spectrum. Inc.,* 78 F.3d 1015, 1018 (5th Cir. 1996) (judicial notice); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1197 (3d Cir. 1993) (letter decisions of governmental agencies).  The Sixth Circuit has stated that a certain amount of flexibility attends the determination whether a matter is outside the pleadings, *Armengau v. Cline*, 7 Fed.Appx. 336, 344 (6th Cir. 2001), and if extrinsic materials merely "fill in the contours and details" of a complaint and add nothing new, they may be considered without converting the motion to one for summary judgment.  *Yeary v. Goodwill Indus.-Knoxville, Inc.,* 107 F.3d 443, 445 (6th Cir. 1997).

In this case, the parties agree that the Court may consider the transcript of the broadcast in adjudicating Defendants' motion to dismiss.  The Court agrees.  *See Suarez Corp. v. CBS, Inc.*, 23 F.3d 408 (6th Cir. 1994) (Table decision, text available on Westlaw) (reversing and remanding the district court's decision granting the defendants' motion to

6

dismiss, with specific instructions to examine the broadcast in its entirety to determine whether it contained any defamatory statements); *McGee v. Simon & Schuster, Inc.*, 154 F. Supp. 2d 1308, 1311 n. 3 (S.D. Ohio 2001) (stating that it could consider the text of the allegedly defamatory book, a copy of which was attached to the defendants' motion to dismiss, without converting it into a motion for summary judgment).

In addition, Defendants allege that the courtesy notice left by the PCAC and the 911 call logs are matters of public record and, therefore, properly before the Court. Plaintiff, on the other hand, offers no legal justification for attaching the documents listed above, except to state that:

> Now that the Defendants have "opened this door," so to speak, the Plaintiff has no other choice than[:] 1) to object to the improper submission of evidence[,] and 2) to provide evidence in turn to show that the "evidence" of the Defendants does not carry the significance that the Defendants claim it does and that their claims of fact are not only improper but simply wrong....
>
> If the documents submitted by the Defendants are relevant and admissible, then logic indicates that the Plaintiffs' [sic] extraneous documents are admissible as well, in that they clarify the significance of the documents submitted by the Defendants.

(Doc. # 10 at p. 4).

There is considerable authority from the Sixth Circuit, as well as district courts, regarding what types of documents qualify as "public records" and can, therefore, be considered in ruling on a motion to dismiss. *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) (Civil Service Commission decision and documents from state court case); *Helfrich v. Metal Container Corp.*, 102 Fed.Appx. 451, 452 (6th Cir. 2004) (prior complaint); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (same); *Rhea v. Dollar Tree Stores, Inc.*, No. 04-

7

2254, 2005 WL 2561261, at *3 (W.D. Tenn. Feb. 2, 2005) (EEOC charge); *In re Century Bus. Servs. Sec.*, No. 1:99cv02200, 2002 WL 32254513, at *4 (N.D. Ohio June 27, 2002) (SEC filings, prospectuses, and analysts' reports).

However, the common thread gleaned from these cases is that the exhibits themselves were legally operative documents.  The same cannot be said about the PCAC courtesy notice and 911 call logs in this case.  The Court concludes that the documents submitted by Defendants - aside from the transcript of the subject broadcast - merely serve to illuminate the factual context of the case and do not qualify as "public records." Accordingly, they will not be considered in adjudicating Defendants' motion to dismiss.  For the same reason, the documents attached by Plaintiff in response to Defendants' motion will be disregarded.

Therefore, Plaintiff's motion to strike (Doc. # 11) is denied in part, as to the transcript of the broadcast, and granted in part as to the other documents.

### B.    Motion to Dismiss

#### 1.    Legal Standard

Defendants' motion to dismiss is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure which allows a defendant to move for dismissal of a complaint if it fails to state a claim upon which relief can be granted.  When analyzing the sufficiency of a complaint, the court applies the principle that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 724 (6th Cir. 1996). Courts must "construe the

complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Lillard,* 76 F.3d at 724 (quoting *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994)).

While the complaint need not specify every detail of a plaintiff's claim, it must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gazette,* 41 F.3d at 1064.  While liberal, this standard of review does require more than the bare assertion of legal conclusions. *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Glassner v. R.J. Reynolds Tobacco Co.,* 223 F.3d 343, 346 (6th Cir. 2000) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988)).

### 2.    Discussion

As a federal court sitting in diversity jurisdiction, the Court must apply the law of Kentucky.   In their motion to dismiss, Defendants focus the Court's attention on approximately eleven (11) statements/phrases contained in the broadcast and identified by Plaintiff in his complaint.  At the same time, however, both parties acknowledge that Kentucky law requires that allegedly defamatory statements "should be construed as a whole."   *See McCall v. Courier-Journal and Louisville Times Co.*, 623 S.W.2d 882 (Ky. 1981), *cert denied*, 456 U.S. 975 (1982).   In order for Plaintiff to state a claim for defamation under Kentucky law, he must show that: 1) a defamatory statement was made; 2) of or concerning him; 3) which was published to a third party; and 4) which caused injury

9

to his reputation.  *Columbia Sussex Corp., Inc. v. Hay,* 627 S.W.2d 270, 273 (Ky. Ct. App. 1981). A media defendant "is not to be held to the exact facts or the most minute details of the transactions that it reports."  Rather, the law requires that the publication be "substantially true."  *Bell v. Courier Journal*, 402 S.W.2d 84, 87 (1966).

Defendants' primary argument is that "the majority of the statements about which Plaintiff complains are protected opinion."[3]  In response, Plaintiff claims that even if Defendants merely reported the opinions of Erfman, those opinions could reasonably be understood to imply the assertion of undisclosed defamatory facts (i.e., that Plaintiff does, indeed, neglect his animals).  Contrary to Plaintiff's contention, this is an issue for the Court, rather than the trier of fact.  *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989).

Truth is an affirmative defense and complete defense to a defamation claim.

---

[3] They also allege that at least two statements are privileged under K.R.S. § 411.060.  That statute provides:

> The publication of a fair and impartial report of any proceeding before any state or city legislative or executive body, board or officer, or the whole or a fair synopsis of any bill, report, resolution, bulletin, notice, petition, or other document presented, filed, or used in any proceeding before any state or city legislative or executive body, board or officer, shall be privileged, unless it is proved that the publication was maliciously made. The publication of a fair and impartial report or the whole or a synopsis of any indictment, warrant, affidavit, pleading or other document in any criminal or civil action in any court of competent jurisdiction shall be privileged, unless it is proved that it was published maliciously, or that the defendant after request by the plaintiff has failed to publish a reasonable explanation or contradiction thereof, giving the explanation or contradiction the same prominence and space as the original publication, or that the publisher has refused after request by the plaintiff to publish the subsequent determination of the proceeding. This section shall not authorize the publication of any indecent matter.

*Id*.  According to Defendants, the broadcast "fairly and accurately summarized the complaint filed with Pendleton County Animal Control," entitling them to a qualified privilege.  This argument is unavailing for several reasons.  First, it cannot be said that the "courtesy notice" left by the PCAC at Plaintiff's then-residence constitutes a "proceeding" under the statute.  Second, the express language of the statute does not encompass county proceedings.

*Buchholtz v. Dugan,* 977 S.W.2d 24, 27 (Ky. App.1998).  In addition. "[a]n expression of opinion, as opposed to a defamatory statement of fact, is entitled to an absolute privilege." *Biber v. Duplicator Sales & Service, Inc.,* 155 S.W.3d 732, 737 (Ky. App. 2004).

In *Yancey,* the plaintiff was arrested on suspicion of murder.  The Kentucky Post newspaper reported the arrest and published a story about Yancey's background. Hamilton, a long-time acquaintance of Yancey, was interviewed for the story and related some of the events of Yancey's life.  During the background investigation of Yancey, the paper learned that Yancey had taken up the ministry or thought seriously about doing so. This prompted Hamilton to say "He could preach. He was a smooth talker. He was a con artist. I would never lend him money."  *Id.* at 856.  After he was released on the murder charges, Yancey sued Hamilton and the newspaper for defamation, based on the last three sentences of the above quote, in particular the statement that Yancey was a "con artist." The trial court found Hamilton's statement an opinion and granted summary judgment for the defendants. The Court of Appeals affirmed.

The Kentucky Supreme Court reversed.  In its opinion, it adopted the Restatement Second, Torts § 566, which provides --

> A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable <u>only</u> if it implies the allegation of undisclosed defamatory facts as the basis for the opinion. (emphasis added)

Following the comments to the Restatement, the Court distinguished between "pure" opinion which is absolutely protected and "mixed" expressions of opinion which are not, stating:

> Pure opinion ... occurs where the commentator states the facts on which the opinion is based, or where both parties to the communication know or

assume the exclusive facts on which the comment is clearly based ... In contrast, the mixed type "is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication.

*Id.* at 857.

Thus, what the trial court must decide in "opinion cases" is whether a reasonable person reading the statement in the context of the whole publication would believe it is based upon alleged facts, which, if untrue, would be defamatory. In *Yancey*, the Supreme Court concluded that "in the whole context of its publication, Hamilton's comments created a reasonable inference that they were justified by undisclosed defamatory facts. *Id.* It remanded for a new trial and emphasized that for the plaintiff to win, the jury must not only find that the statements were understood by readers as defamatory, but also that the facts which were the basis of the statement were untrue.

Although unpublished, the most factually analogous case to the facts herein is the case of *Hodge v. WCPO Television News*, No. 97-CI-02516, 2001 WL 1811681, at *1 (Ky. Cir. Ct. Oct. 1, 2001). In *Hodge*, plaintiff alleged that he was defamed and placed in a false light by the defendants as a result of three news broadcasts that aired in September 1997. *Id.* The subject of the broadcasts was the manner in which Hodge was administering the City of Covington's Housing Department, specifically the federal loan program for historic and low income housing rehabilitation. *Id.* Several members of the local business community believed that a close, personal friend of Hodge's was receiving more than her share of the federal housing loans, and one business person contacted WCPO-TV's (Channel 9) I-Team to investigate. *Id.* Channel 9 aired three separate broadcasts dedicated to the alleged improprieties. *Id.*

12

In granting defendants' motion for summary judgment, the court's rationale was three-fold. First, the court found as a matter of law that, to the extent the broadcasts reported on the personal relationship between Hodge's and one particular developer, they were not false. *Id*. at *2. As a corollary, the court also noted that the Department of Housing and Urban Development (HUD) investigated the complaints concerning Hodge, and in a September 1998 report, concluded that his "friend" had benefitted from the loan program to a greater extent than any other investor. *Hodge*, 2001 WL 1811681 at *2. Second, the court found that the fact that the defendants reported the opinions or perceptions of those who were critical of Hodge was not actionable, where those opinions were based upon disclosed facts. *Id*. Finally, the court concluded that the statements contained in the broadcasts were not defamatory. *Id*. at *3. According to the court, "[a]t worst, the publications questioned whether Mr. Hodge gave favorable treatment to a close friend in his administration of the federal housing loan program." *Id.*

Upon the Court's review of Defendants' broadcast and the transcript thereof, the majority of the statements are pure opinion and, therefore, absolutely privileged. In fact, the only potentially actionable statement occurred when Mr. Sussi reported, "Herman says the family who owns this trailer, amid piles of trash and junk cars, moved to a nearby home *leaving these two dogs behind, hungry and neglected*" (emphasis added). Plainly stated, this statement is Erfman's opinion and does not, in the whole context of the broadcast, imply an allegation of undisclosed defamatory facts as the basis for that opinion.

The broadcast lasts approximately two minutes and contains video showing the physical condition of the dogs, the conditions under which they were being kept, which includes being chained and caged, as well as interviews of Erfman, Plaintiff, and a county

13

animal control officer.  During the brief interview of Plaintiff, several expletives were used by Plaintiff which were bleeped out prior to the broadcast.  Prior to broadcasting the report, the reporter investigated Erfman's complaints and reported on what he observed, which corroborated Erfman's opinions.  This included determining that Plaintiff was no longer living at the location, corroborated by the fact that Plaintiff is shown arriving in a pick-up truck during the filming, and his personal observations regarding the conditions on the property.  The broadcast also included the fact that Erfman had complained to the local animal shelter and the local animal control officer had issued plaintiff a written warning four days earlier to clean up his property and better provide for his animals.  These were all facts disclosed during the two minute broadcast.

Construing the facts in the light most favorable to Plaintiff, as is required in considering Defendants' motion to dismiss, the Court concludes as a matter of law that the February 15, 2005 broadcast, when viewed as a whole, was not false as is required to prove a defamation action under Kentucky law.  Additionally, the Court's review of the broadcast reveals that it cannot be said that the broadcast was not substantially true.  Defendants reported the opinions of Plaintiff's neighbor, corroborated those statements through its reporter's investigation, and the broadcast did not imply the allegation of undisclosed defamatory facts as the basis for Erfman's opinions.  For these reasons, the motion to dismiss is well taken and will be granted.

A few additional matters deserve brief consideration.  In addition to his defamation claim, Plaintiff has brought claims for intentional infliction of emotional distress (IIED), false light, negligence, and the tort of outrage arising out of the Defendants' broadcast.  For the reasons that follow, these claims also fail as a matter of law.

14

Although brought as separate claims, because the torts of intentional infliction of emotional distress and outrage require proof of the same elements, they are analyzed together.  Both require a plaintiff to prove the following elements: (1)  the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the distress suffered must be severe.  *Osborne v. Payne,* Ky., 31 S.W.3d 911, 913-914 (2000), *citing Craft v. Rice,* Ky., 671 S.W.2d 247 (1984).

In reviewing the subject broadcast, and construing the evidence in light most favorable to Plaintiff, Plaintiff's claims for IIED and tort of outrage fail as a matter of law. Not only are those claims derivative of Plaintiff's defamation claim, which fails as a matter of law, there is no evidence that Defendants' conduct in investigating and broadcasting Erfman's opinions was intentional or reckless.  Moreover, the two minute broadcast cannot be characterized as outrageous and intolerable in that it offends against the generally accepted standards of decency and morality.

Plaintiff's false light and negligence[4] claims also fail as a matter of law.  To sustain an action for false light invasion of privacy, a plaintiff must establish: (1) that the false light in which he was placed would be highly offensive to a reasonable person; and (2) that the statement placing the plaintiff in a false light was published with knowledge that the statements were false or in reckless disregard for the false light in which the statements placed the plaintiff.  *Yancey, supra; McCall,* 623 S.W.2d at 888.  As it relates to Plaintiff's

---

[4]  Plaintiff's negligence claim fails as a matter of law for the same reasons his defamation claim.

false light claim, the fact that he is a private individual is of no consequence.  While the simple negligence standard applies to private individuals in the context of a defamation claim, with respect to a false light invasion of privacy claim, Kentucky law specifically requires proof of knowledge of or reckless disregard for the falsity of the statements. *Yancey,* 786 S.W.2d at 860 ("[T]o prevail on his invasion of privacy claim, Yancey will have to prove respondents either knew of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which movant was placed.  The actual malice standard will apply regardless of Yancey's status as a private individual or a public figure."); *McCall,* 623 S.W.2d at 888.

As previously stated, the broadcast was substantially true and reported the opinions of Plaintiff's neighbor, which opinions were corroborated by disclosed facts.  Under these facts, Plaintiff is unable to establish that the broadcast was aired by Defendants with knowledge that the statements were false or in reckless disregard for the allegedly false light in which the statements placed Plaintiff.

Lastly, Plaintiff's motion and memorandum to submit a sur-reply (Doc. # 14) is not well taken and will be denied.  To the extent Plaintiff re-argues the merits of his motion to strike, consideration of the sur-reply is unnecessary as that motion has already been adjudicated in Plaintiff's favor herein.  To the extent Plaintiff re-argues the merits of Defendants' motion to dismiss, consideration of Plaintiff's sur-reply is not warranted as Defendants' reply memorandum (Doc. # 12) did not raise any new issues which had not been previously raised.  For these reasons, Plaintiff's motion for leave to file a sur-reply to Defendants' motion to dismiss (Doc. # 14) is denied.

**Conclusion**

For the reasons stated herein, **IT IS ORDERED AS FOLLOWS**:

(1)     Defendants' Rule 12(b)(6) Motion to Dismiss (Doc. # 6), be, and is hereby **granted**;

(2)     Plaintiff's Motion to Strike (Doc. # 11) be, and is hereby **denied in part**, as to the transcript of the broadcast, and **granted in part** to the other challenged documents;

(3)     Plaintiff's Motion for Leave to file a Sur-reply to Defendants' Motion to Dismiss (Doc. # 14) be, and is hereby **denied**;

(4)     Plaintiff's complaint and amended complaint are hereby **dismissed with prejudice** and **stricken** from the docket of this Court.

A Judgment in favor of Defendants will be entered contemporaneously herewith.

This 14th day of March, 2006.



Signed By:

_David L. Bunning_   DB

**United States District Judge**

G:\DATA\Opinions\2-05-87-MTD.wpd